# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALAN KIRKENDOLL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-7942-WBV-JVM** |
| **ENTERTAINMENT ACQUISITIONS, LLC** | **SECTION: D (1)** |

## ORDER AND REASONS

Before the Court is Defendant Entertainment Acquisitions, LLC's Rule 12(B)(6) Motion to Dismiss for Failure to State a Claim.[1]  Plaintiff opposes the Motion,[2] and Defendant has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This is a suit to recover missed monthly installment payments under a promissory note and for recognition of certain security interests securing the note. On March 31, 2015, Alan Kirkendoll ("Plaintiff") and Entertainment Acquisitions, LLC ("Defendant"), executed a Promissory Note (the "Promissory Note"), in which Defendant agreed to pay Plaintiff monthly installments of $35,200.20 until the value of the Note (approximately $2.5 million dollars in principal, plus five percent non-compounding interest accruing monthly), was paid in full.[4]  Plaintiff alleges that

---

[1] R. Doc. 11.
[2] R. Doc. 14.
[3] R. Doc. 19.
[4] R. Doc. 1 at ¶ 7; R. Doc. 1-1.

Defendant failed to pay the monthly installments from April 1, 2017 through April 1, 2019.[5]

On April 3, 2019, Plaintiff filed a Complaint in this Court, seeking to recover the missed monthly payments for April 1, 2017, through April 1, 2019, which total $880,005, plus interest on the principal sum at the rate of 5% per annum from March 31, 2015.[6] Plaintiff claims that, because the Promissory Note does not contain an acceleration clause, he cannot sue for the entire balance due under the Promissory Note at this time and, therefore, he will have to file new complaints in this Court periodically to recover any additional missed monthly installment payments.[7] Plaintiff also seeks reasonable attorney's fees, as provided for in the Promissory Note.[8] Although not asserted as a separate claim, in a prayer for relief, Plaintiff asks the Court for a judgment "recognizing the security interest contained in the [Promissory Note], as encumbering the property described in paragraph 3, above . . . and that, when said property is sold, plaintiff be paid by preference and priority out of the proceeds of the sale . . . ."[9]

On May 20, 2019, Defendant filed the instant Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, seeking to dismiss all of Plaintiff's claims with

---

[5] R. Doc. 1 at ¶¶ 9, 10.

[6] *Id*. at ¶ 10. Plaintiff asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff is a Louisiana domiciliary and Defendant is a limited liability company whose sole member, John Kirkendoll, who happens to be Plaintiff's brother, is domiciled in Colorado. *Id*. at ¶¶ 2-4. Thus, complete diversity of citizenship exists. Because Plaintiff seeks to recover $880,005, plus interest, the amount in controversy is also satisfied. *Id*. at ¶¶ 10-11.

[7] *Id*. at ¶ 12.

[8] *Id*. at ¶ 13.

[9] *Id*. at p. 6.

prejudice.[10] Defendant asserts that Plaintiff has failed to plead sufficient facts to show that a default has occurred under the terms of the Promissory Note and, as such, is not entitled to recover the unpaid installment payments or to foreclose on any collateral. Defendant points out that Plaintiff previously filed suit in state court seeking to accelerate all sums due under the Promissory Note and to have the court recognize a security interest encumbering certain property described in the Petition as securing all amounts owed under the Promissory Note.[11] Defendant removed that action to the United States District Court for the Middle District of Louisiana, and subsequently filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[12] Defendant claims that his motion to dismiss was granted on September 17, 2018, and Plaintiff's claims were dismissed with prejudice.[13] Defendant notes that Plaintiff did not appeal that ruling.[14] Defendant asserts that the instant suit is Plaintiff's attempt to get a second bite at the apple and that this case should be dismissed for the same reasons as the prior case.

Defendant argues that in the Promissory Note, the parties agreed that the Principal Amount and interest thereon would be due upon a certain date – the Maturity Date – which is the earlier of the seventh anniversary of the Promissory Note (March 31, 2022) or a "Liquidity Event," as that term is defined in the Promissory Note.[15] Defendant points out that the parties defined four "exclusive"

---

[10] R. Doc. 11.

[11] R. Doc. 11-1 at pp. 1-2 (*citing* R. Doc. 1 in *Kirkendoll v. Entertainment Acquisitions, LLC*, Civ. A. No. 17-1701-SDD-RLB (M.D. La. 2017)) (hereafter, "*Kirkendoll I*").

[12] R. Doc. 11-1 at p. 2 (*citing* R. Doc. 4 in *Kirkendoll I*).

[13] R. Doc. 11-1 at p. 2 (*citing* R. Doc. 14 in *Kirkendoll I*).

[14] R. Doc. 11-1 at p. 2.

[15] *Id*. at pp. 4, 6 (*quoting* R. Doc. 1-1).

events that might upset that payment, thus constituting default.[16]   Defendant

contends that the four exclusive events constituting a default are: (1) Defendant's

failure to pay any amounts due on the Maturity Date and failure to cure to

nonpayment within 10 days; (2) the institution of any bankruptcy or insolvency

proceeding by or against Defendant; (3) assignment by the Defendant for the benefit

of creditors; or (4) the appointment of a receiver for the Defendant.[17]   Defendant

asserts that the Promissory Note further provides that the "sole and exclusive

remedy" for an event of default is for Plaintiff to accelerate payment in full of the

unpaid principal amount.[18]   Defendant points out that the Promissory Note states

that it shall be governed by Delaware law.[19]

Defendant argues that Plaintiff has failed to plead facts to show that a default

event has occurred and, as such, has failed to plead sufficient facts to state a claim

for relief.[20]   Defendant claims that Plaintiff is suing for an alleged default under the

Promissory Note for failure to pay monthly installment payments, which is not one

of the exclusive default events delineated in the Promissory Note.[21]   Defendant

argues that only the failure "to pay any amount due hereunder **on the Maturity**

**Date,**" and the failure to such non-payments within 10 days constitutes a default

event.[22]   Because Plaintiff has not alleged any facts to show the occurrence of a

---

[16] R. Doc. 11-1 at p. 6.
[17] *Id*. at pp. 4-5 (*citing* R. Doc. 1-1 at p. 3).
[18] R. Doc. 11-1 at p. 5 (*quoting* R. Doc. 1-1 at p. 6) (internal quotation marks omitted).
[19] R. Doc. 11-1 at p. 5 (*citing* R. Doc. 1-1 at p. 6).
[20] R. Doc. 11-1 at p. 6.
[21] *Id*. (*quoting* R. Doc. 1-1 at p. 6).
[22] R. Doc. 11-1 at pp. 6-7 (*quoting* R. Doc. 1-1 at p. 6) (emphasis in original) (internal quotation marks omitted).

"Liquidity Event," as that term is defined in the Promissory Note, Defendant argues the Maturity Date is March 31, 2022, which has not come to pass. As such, Defendant claims Plaintiff has failed to plead sufficient facts to show he is entitled to the relief requested. Although Plaintiff explicitly states in his Complaint that he intends to pursue further litigation for installment payments due or becoming due in the future, Defendant asserts that the purpose behind defining the exclusive default events and providing for acceleration of all payments owed if a default event occurs is to prevent this type of piecemeal litigation.[23]

To the extent Plaintiff seeks to foreclose on the alleged security interest securing the Promissory Note, Defendant asserts that Delaware law does not allow Plaintiff to foreclose on its security interest absent a "default."[24] Defendant maintains that it has not triggered default under the Promissory Note, because only the failure to pay by the Maturity Date constitutes one of the exclusive events of default.[25] Because the Maturity Date is not until March 31, 2022, Defendant argues Plaintiff has not and cannot allege a default, as that term is defined by the Promissory Note and, consequently, cannot invoke any right to foreclose on any collateral securing the Promissory Note.[26] Defendant asserts that Plaintiff should not be granted leave to amend his Complaint to cure these deficiencies because Plaintiff cannot allege any facts that would trigger one of the four exclusive default events

---

[23] R. Doc. 11-1 at p. 8.
[24] *Id.* at p. 9 (*citing* 6 Del. Code §§ 9-601, 9-607 & 9-610).
[25] R. Doc 11-1 at p. 9 (*quoting* R. Doc. 1-1 at p. 9).
[26] R. Doc. 11-1 at p. 9.

under the Promissory Note.[27]  As such, Defendant claims any such amendment by Plaintiff would be futile.

Plaintiff opposes the Motion, asserting that he is entitled to recover the past due installments, and can sue Defendant on a monthly basis for any installment payments as they become due.[28]  Plaintiff agrees with Defendant that he does not have the right to accelerate the amounts due under the Promissory Note at this time because no event of default exists, and that the Maturity Date of the Promissory Note is March 31, 2022 because he has not alleged a "Liquidity Event."[29]  Nonetheless, Plaintiff argues that he is entitled to recover the past due installments because the language regarding events of default in the Promissory Note do not restrict that right.[30]  In other words, Plaintiff claims that he is entitled to a money judgment for each installment payment due because there is currently no enforceable acceleration clause.[31]

Plaintiff then cites two Louisiana cases that purportedly address the difference between *ipso facto* acceleration clauses and optional acceleration clauses in a promissory note or series of notes,[32] and two Louisiana cases that discuss the inclusion of an acceleration clause in the act of credit sale that gave rise to a promissory note.[33]  Plaintiff cites several additional Louisiana cases to support his

---

[27] *Id*.
[28] R. Doc. 14 at p. 3.
[29] *Id*. at pp. 2-3 (*quoting* R. Doc. 1-1).
[30] R. Doc. 14 at pp. 3-4 (*quoting* R. Doc. 1-1).
[31] R. Doc. 14 at p. 5.
[32] R. Doc. 14 at p. 5 (citing *A Second Mortgage Co. of Baton Rouge, Inc. v Gatlin*, 233 So.2d 583, 585 (La. App. 1 Cir. 1970); *Haik v. Rowley*, 377 So.2d 391, 392 (La. App. 4 Cir. 1979)).
[33] R. Doc. 14 at p. 5 (citing *Gaines v. Bonnabel*, 121 So. 764, 765 (La. 1929); *Torrey v. Simon-Torrey, Inc.*, 307 So.2d 569, 574 (La. 1974)).

contention that, absent an *ipso facto* acceleration clause, or the exercise of an optional acceleration clause, installment payments on a promissory note prescribe five years from the date each installment becomes due.[34]  Plaintiff claims the five-year prescriptive period on promissory notes is set forth in La. Civ. Code art. 3498, surmising that, if prescription can run on an unpaid installment, suit can be brought to enforce those unpaid installments before prescription runs.[35]  Because the Promissory Note requires monthly installment payments, Plaintiff argues he has a cause of action for the monthly installments that were due on April 1, 2017, and any additional installments that have or will become due thereafter.[36]  Plaintiff claims that the fact that there has been no event of default to trigger his right to accelerate payments due under the Promissory Note does not prevent Defendant from paying the monthly installments when they are due, and does not prevent Plaintiff from suing to recover the monthly installments when they become due.  Plaintiff maintains that nothing in the Promissory Note prevents him from taking such action.[37]

Plaintiff further asserts that under Louisiana law, specifically La. Code Civ. P. art. 2341, all of the collateral held to secure the Promissory Note may be seized and sold to satisfy the judgment of this Court plus any installments that would mature prior to the sale, to be paid in cash, and to satisfy the remainder of the unmatured

---

[34] R. Doc. 14 at p. 5 (citing *JP Morgan Chase Bank, N.A. v. Boohaker*, 14-0594, p.10 (La. App. 1 Cir. 11/20/14), 168 So.3d 421, 428; *Harrison v. Smith*, 01-0478, p.3 (La. App. 1 Cir. 3/28/02), 814 So.2d 42, 45; *Johnston v. Johnston*, 568 So.2d 567, 568 (La. App. 5 Cir. 1990); *Home Fin. Corp. v. Fisher*, 361 So.2d 463, 464 (La. App. 1 Cir. 1978); *Anthon v. Knox*, 155 So.2d 53, 54 (La. App. 1 Cir. 1963)).
[35] R. Doc. 14 at p. 6.
[36] *Id*. at pp. 6-7 (*quoting* R. Doc. 1-1).
[37] R. Doc. 14 at p. 7.

debt, to be paid on credit.[38]  Relying upon Louisiana jurisprudence, Plaintiff claims that the remainder of the sheriff's sale price, over and above the cash amount needed to satisfy the then-due installments, would be paid on corresponding credit terms.[39] Plaintiff asserts that any judgment rendered in this case should make it clear that it does not bar subsequent litigation to collect installment payments for which judgment is not awarded.  If the Court renders a judgment in Plaintiff's favor, he asks that the judgment clarify that the collateral may be sold for the unpaid installments.[40]  Based on the foregoing, Plaintiff contends that Defendant's Motion should be denied because he has stated a claim upon which relief can be granted.

In response, Defendant asserts that Plaintiff's entire Opposition brief focuses on Louisiana substantive law, even though the parties explicitly agreed that the Promissory Note would be governed by Delaware law without giving effect to conflicts of law principles.[41]  As such, Defendant argues Louisiana law should have no bearing on this Court's determination of the instant Motion.  While Plaintiff argues that the monthly installment payments are due under Louisiana law, Defendant maintains that Plaintiff does not have a cause of action because the unpaid principal amounts are not due and exigible at this time.  Defendant maintains that the Promissory Note specifies that the Principal Amount and interest thereon will be due upon a date certain – the "Maturity Date" – which is defined as the earlier of the seventh

---

[38] *Id*. at p. 8 (citing *City Sav. Bank & Trust Co. v. Wilkinson*, 115 So.629, 630 (La. 1928); *Penouilh v. Abraham*, 10 So. 676 (La. 1892); *Louisiana Land & Immigration Co. v. Murff*, 72 So. 284, 288 (La. 1916)).

[39] R. Doc. 14 at p. 8 (citing *Louisiana Land & Immigration Co.*, 72 So. at 288; *Lemoine v. Wheless Inv. Co.*, 159 So. 434 (La. App. 2 Cir. 1935)).

[40] R. Doc. 14 at p. 9.

[41] R. Doc. 19 at p. 1 (*quoting* R. Doc. 1-1 at p. 6) (quotation marks omitted).

anniversary of the Note (March 31, 2022), or a Liquidity Event.[42] Defendant also maintains that the parties specified four events that would upset that payment as the exclusive events constituting a default, and points out that Plaintiff conceded in his Opposition brief that "no event of default exists."[43] Defendant asserts that, because the parties agreed that any unpaid principal is not due until either an event of default or the Maturity Date, such amounts are not due and exigible at this time. Defendant argues that, under Louisiana law, prescription does not begin to run on those amounts until either of those event occurs.

Moreover, even if the five-year prescriptive period ran from the date of the first alleged missed installment (April 1, 2017), Defendant asserts the claim would not prescribe until April 1, 2022, which is after the Maturity Date of March 31, 2022.[44] Thus, Defendant claims Plaintiff is not at risk of losing his right to sue to recover the installment payments prior to the Maturity Date. Defendant argues that Plaintiff's suit is nothing more than an attempt to have this Court rewrite the terms of the Promissory Note and circumvent the contractually agreed-upon events of default and exclusive remedies related thereto. Defendant maintains that Plaintiff cannot foreclose on any alleged security interest under either Delaware or Louisiana law because, as Plaintiff concedes in his Opposition brief, no event of default has occurred.[45] While Plaintiff relies upon La. Code Civ. P. art. 2341, Defendant points

---

[42] R. Doc. 19 at p. 2 (*quoting* R. Doc. 1-1 at p. 1) (quotation marks omitted).
[43] R. Doc. 19 at pp. 2-3 (*quoting* R. Doc. 14 at p. 3) (internal quotation marks omitted).
[44] R. Doc. 19 at p. 3.
[45] R. Doc. 19 at pp. 4-5 (*citing* R. Doc. 14 at p. 3; 6 Del. Code §§ 9-601, 9-607 & 9-610; La. R.S. 19:9-601(a)).

out that the official comments to La. Code Civ. P. art. 2341 specify that it provides for payments "in the absence of an acceleration clause."[46]  Because the Promissory Note contains an acceleration clause, Defendant asserts Article 2341 is not applicable in this case.  Defendant also asserts that the Louisiana cases cited by Plaintiff are not applicable because they were decided more than 50 years before Louisiana passed La. R.S. 10:9-601, which requires a default before one can foreclose on a security interest and, as conceded by Plaintiff, no default has occurred.[47]  As such, Defendant maintains that the Court should grant its Motion and dismiss Plaintiff's lawsuit with prejudice.

## II.  LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b) Motion to Dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[48]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[49]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[50]  "The plausibility standard is not akin to a

---

[46] R. Doc. 19 at p. 5 (*quoting* La. Code. Civ. P. art. 2341).
[47] R. Doc. 19 at p. 5.
[48] Fed. R. Civ. P. 12(b)(6).
[49] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[50] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[51]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[52]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. [53] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[54]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[55]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[56]

## III.   ANALYSIS

### A. The parties agreed that the interpretation and construction of the Promissory Note would be governed by Delaware law.

As an initial matter, the Court finds that, in determining whether to grant Defendant's Motion, the Court can consider matters outside of the pleadings, namely the Promissory Note, because it was attached as an exhibit to and referenced in

---

[51] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).
[52] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).
[53] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[54] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).
[55] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[56] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004).

Plaintiff's Complaint,[57] and because it is central to Plaintiff's claims to recover missed monthly installment payments required under the Promissory Note.[58] The Court further finds that, because Plaintiff has invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332, this Court must apply the substantive law of the forum state, Louisiana.[59] Under Louisiana law, contractual choice-of-law provisions are presumed valid unless the chosen law contravenes the public policy of the state whose law would otherwise apply.[60] Further, the party seeking to prove such a provision invalid bears the burden of proof.[61] Here, the Promissory Note states that it "shall be governed and controlled as to validity, endorsement, interpretation, construction, effect and in all other respects by the internal laws of the State of Delaware without giving effect to conflicts of law principles."[62] Applying Louisiana law, the Court finds that the choice of law provision in the Promissory Note is presumptively valid. Because Plaintiff has not alleged, much less shown, that the choice of law provision is invalid, the Court finds that its interpretation and application of the Promissory Note is governed by Delaware law.

---

[57] R. Doc. 1-1.
[58] *See Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[59] *Wiley v. State Farm Fire & Cas. Co.* 585 F.3d 206, 210 (5th Cir. 2009).
[60] *Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation and Construction, LLC*, 166 F. Supp. 3d 684, 690 (E.D. La. 2016) (*citing* La. Civ. Code art. 3540).
[61] *Axis Oilfield*, 166 F. Supp. 3d at 690 (citing *Barnett v. Am. Const. Hoist, Inc.*, 2011-1261 (La. App. 1 Cir. 2/10/12), 91 So.3d 345, 349).
[62] R. Doc. 1-1 at p. 3.

**B. Under Delaware Law, the Promissory Note is clear and unambiguous.**

*1. Contract interpretation under Delaware law.*

The principles governing contract interpretation are well settled under Delaware law. "Contracts must be construed as a whole, to give effect to the intentions of the parties."[63] As Defendant points out,[64] "Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."[65] Delaware courts consider extrinsic evidence to interpret the agreement only if there is an ambiguity in the contract.[66]

*2. The terms of the Promissory Note.*

The Promissory Note, which is dated March 31, 2015, is for the Principal Amount of $2,500,856.[67] The Promissory Note provides that, "The unpaid Principal Amount, together with all accrued but unpaid interest thereon, shall be due and payable in full on upon [sic] the earlier of (a) the seventh (7th) anniversary of the date of this Note, or (b) a Liquidity Event (the earlier of (a) or (b), the 'Maturity Date')."[68] The Promissory Note defines "Liquidity Event" to mean: (i) the acquisition of beneficial ownership of each of the Companies outstanding equity securities, taken as a whole; (ii) consummation of a reorganization, share or equity exchange, merger or consolidation, or sale or other disposition of all or substantially all of the assets of

---

[63] *Northwestern Nat. Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996) (citing *E.I. duPont de Nemours and Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (De. 1985)).
[64] R. Doc. 11-1 at p. 5.
[65] *Northwestern Nat. Ins. Co.*, 672 A.2d at 43 (citing *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).
[66] *Northwestern Nat. Ins. Co.*, 672 A.2d at 43 (citing *Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991)).
[67] R. Doc. 1-1 at p. 1.
[68] *Id.*

each of the Companies, taken as a whole, or (iii) approval by the shareholders or voting members of each of the Companies, taken as a whole, of a complete liquidation or dissolution of all of the Companies, taken as a whole; provided, however, that for purposes of the Note, a "Liquidity Event" shall not include (x) a transfer, contribution, merger, sale or assignment (or other internal reorganization) of all or substantially all of the equity, assets and/or liabilities of any of the Companies to any of its or their affiliates, including the Purchaser, or (y) the issuance of additional debt or equity interests by any of the Companies after the Effective Date in connection with capital raising efforts.[69]  The Promissory Note specifies that "any reference to 'Company' or 'Companies' in this Note shall be deemed to *exclude* reference to 929 Bienville in all respects.[70]

The Promissory Note requires that, "The Principal Amount shall be paid in equal monthly installments (each, an 'Installment Payment') on or before the tenth (10th) Business Day following the end of each calendar month between the Initial Installment Payment Date (as defined below) and the Maturity Date (each, an 'Installment Payment Date')."[71]  The Promissory Note specifies that, "Maker will pay the Principal Amount, together with interest, in equal Installment Payments of THIRTY FIVE THOUSAND TWO HUNDRED & 20/100 Dollars ($35,200.20).  The first Installment Payment under this Note shall be due and payable by Maker to Holder on or before September 1, 2015 (the 'Initial Installment Payment Date')."[72]

---

[69] *Id.*
[70] *Id.* (emphasis in original).
[71] *Id.* at pp. 1-2.
[72] *Id.* at p. 2.

Pertinent to the instant litigation, the Promissory Note contains the following provision regarding default:

> The following actions and/or inaction shall constitute the exclusive default events under this Note:
> (i) Maker shall fail to pay any amounts due hereunder on the Maturity Date and has not cured such nonpayment within 10 days of its occurrence;
> (ii) any proceeding shall be instituted by or against Maker under any bankruptcy or insolvency statute;
> (iii) Maker shall make an assignment for the benefit of creditors; or
> (iv) a receiver shall be appointed for Maker.[73]

The Promissory Note also specifies the Plaintiff's rights upon default as follows:

> Should any one or more default events occur and be continuing under this Note as provided above, Holder shall have the right, at its sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid Principal Amount then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein . . . .[74]

The Promissory Note further provides that, "For the avoidance of doubt, Make [sic] and Holder hereby acknowledge and agree that Holder's rights identified immediately above shall constitute the *sole and exclusive* remedy against Maker hereunder *upon default* by Maker under this Note." [Emphasis added][75]

---

[73] *Id.* at p. 3.
[74] *Id.*
[75] *Id.* (emphasis in original).

### 3. *The terms of the Promissory Note are clear and unambiguous and do not provide a cause of action for the recovery of missed monthly installment payments at this time.*

Applying Delaware law, the Court agrees with Defendant that the terms of the Promissory Note are clear and unambiguous. Under the clear terms of the Promissory Note, the parties agreed that the unpaid Principal Amount and interest thereon would be due upon the Maturity Date, which is defined as the earlier of the seventh anniversary of the Promissory Note (March 31, 2022) or a "Liquidity Event," as that phrase is defined in the Promissory Note. The parties agree on this point.[76] The parties also agree that there has been no "Liquidity Event," so the Maturity Date on the Promissory Note is March 31, 2022.[77] The parties further agree that the Promissory Note sets forth four *exclusive* default events that give Plaintiff the right to accelerate the Maturity Date and demand immediate payment in full of the unpaid Principal Amount and accrued interest thereon, and that no event of default has yet occurred.[78] In fact, in his Opposition brief, Plaintiff admits that he "agrees with the defendant that the note defines an event of default in such a way as plaintiff does not have the right to accelerate the amounts due under the note at this time."[79]

As Defendant points out, the failure to pay monthly installments of the Principal Amount is not one of the exclusive events of default set forth in the Promissory Note.[80] Thus, under the clear and unambiguous terms of the Promissory

---

[76] *See* R. Doc. 11-1 at pp. 4, 6-7; R. Doc. 14 at pp. 2-3.
[77] *See* R. Doc. 11-1 at p. 7; R. Doc. 14 at p. 3.
[78] *See* R. Doc. 11-1 at pp.4-5, 6-7; R. Doc. 19 at pp. 2-3; R. Doc. 14 at p. 3.
[79] R. Doc. 14 at p. 2.
[80] R. Doc. 1-1 at p. 3; *See* R. Doc. 11-1 at pp. 6, 7.

Note, even though Defendant has intentionally missed monthly payments, Plaintiff cannot sue to collect those missed monthly installment payments until either the Maturity Date or an event of default occurs.[81] Because Plaintiff concedes that no event of default has occurred and that he has not alleged a Liquidity Event, Plaintiff cannot sue to recover the missed monthly installments until March 31, 2022, the seventh anniversary date of the Promissory Note.[82] Accordingly, Plaintiff has failed to allege sufficient facts to state a claim for the missed installment payments under the Promissory Note.

To the extent Plaintiff asserts that he is entitled to recover the missed monthly installment payments because "the promissory note sued on does not have what has become commonplace in most promissory notes, an acceleration clause,"[83] Plaintiff's assertion is baseless. As previously mentioned, the Promissory Note explicitly provides that, if one of the four exclusive events of default occur, "Holder shall have the right, at its sole option, to declare formally this Note to be in default *and to accelerate* the maturity and insist upon immediate payment in full of the unpaid Principal Amount then outstanding under this Note . . . ."[84] Thus, contrary to Plaintiff's assertion, the Promissory Note does contain an acceleration clause. Moreover, on the same page as the foregoing assertion, Plaintiff admits that, "The event of default language is written so that the note cannot be accelerated until after

---

[81] As the Court must interpret the terms of the Promissory Note based upon the applicable law, it wisely declines to offer an opinion on Defendant's conduct in intentionally missing monthly payments on a $2.5 million dollar loan made to him by his brother.

[82] R. Doc. 1-1 at p. 1.

[83] R. Doc. 14 at pp. 1-2.

[84] R. Doc. 1-1 at p. 3.

the 'Maturity Date.'"[85]  As such, it is evident to the Court that Plaintiff is keenly aware that the Promissory Note contains an acceleration clause that cannot be invoked at this time.

Plaintiff argues that, "as there is no *currently enforceable* acceleration clause, plaintiff is entitled to a money judgment for each installment payment that is due."[86] Plaintiff's assertion, however, is unfounded.  Plaintiff attempts to rely upon Louisiana jurisprudence and La. Civ. Code art. 3498[87] for the proposition that he should be allowed to recover the missed installment payments based upon the five-year prescriptive period on installment payments under a promissory note.[88]  Plaintiff's reliance upon Louisiana law, however, is misplaced.   Under the clear and unambiguous terms of the Promissory Note, the parties explicitly agreed that "this Note shall be governed and controlled as to validity, endorsement, *interpretation, construction, effect* and in all other respects by the internal laws of the State of Delaware without giving effect to conflicts of law principles."[89]  Moreover, the Louisiana law cited by Plaintiff does not support his position that prescription begins to run when the installment payments become due.[90]  Rather, it shows that prescription begins to run on installment payments when they become due and

---

[85] R. Doc. 14 at p. 2.
[86] R. Doc. 14 at p. 5 (emphasis added).
[87] Article 3498 provides that, "Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years.  This prescription commences to run from the day payment is exigible."  La. Civ. Code art. 3498.
[88] R. Doc. 14 at pp. 5-6.
[89] R. Doc. 1-1 at p. 3 (emphasis added).
[90] R. Doc. 14 at p. 5.

*exigible*,[91] and that prescription begins to run on an accelerated note upon acceleration.[92] Moreover, several of the cases cited by Plaintiff are distinguishable because they involve promissory notes with acceleration clauses that allow the holder to render the entire balance due and payable upon the failure to pay an installment.[93]

Based on the foregoing, the Court finds that Plaintiff has failed to allege sufficient facts to state a claim to recover the monthly installment payments owed under the Promissory Note. Under the clear and unambiguous terms of the Promissory Note, the failure to make an installment payment is not one of the four "exclusive default events" that give Plaintiff the right to accelerate the Maturity Date of the Promissory Note and demand payment in full of the unpaid Principal Amount and outstanding interest. Because Plaintiff has not alleged a Liquidity Event, as that term is defined in the Promissory Note, the Maturity Date of the Promissory Note is not until March 31, 2022. As such, Plaintiff does not have a claim for the recovery of any unpaid installment payments at this time.

### C. Plaintiff has failed to state a cause of action to foreclose on the security interest.

In his Opposition brief, Plaintiff clarifies that his suit "also seeks recognition of the grant of security interests in certain corporations and limited liability companies."[94] Relying exclusively upon Louisiana law, Plaintiff claims that all of the

---

[91] *See* La. Civ. Code art. 3498; *JP Morgan Chase Bank, N.A. v. Boohaker*, 14-0594, p.10 (La. App. 1 Cir. 11/20/14), 168 So.3d 421, 428; *Harrison v. Smith*, 01-0478, p.3 (La. App. 1 Cir. 3/28/02), 814 So.2d 42, 45.

[92] *Harrison v. Smith*, 01-0478 at p.3, 814 So.2d at 45.

[93] *See Johnston v. Johnston*, 568 So.2d 567, 568 (La. App. 5 Cir. 1990); *Home Fin. Corp. v. Fisher*, 361 So.2d 463, 464 (La. App. 1 Cir. 1978); *Anthon v. Knox*, 155 So.2d 53, 54 (La. App. 1 Cir. 1963).

[94] R. Doc. 14 at p. 1.

collateral held to secure the Promissory Note may be seized and sold to satisfy any judgment rendered in his favor, including any installments that mature prior to the sale, in cash, and to satisfy the remainder of the unmatured debt, to be paid on credit.[95]   Plaintiff, however, fails to direct the Court to any Delaware law that supports his position, as required under the express terms of the Promissory Note. Further, as Defendant points out, Delaware law prohibits Plaintiff from foreclosing on its security interest absent a "default."[96]   Delaware law also clearly provides that, "the secured party's rights arise '[a]fter default.'   As did former Section 9-501, this Article leaves to the agreement of the parties the circumstances giving rise to a default."[97]   Because Plaintiff has admitted in his Opposition brief that, "as of this point in time, no event of default exists,"[98] he cannot seek foreclosure or sale of the collateral securing the Promissory Note under Delaware law.   Accordingly, Plaintiff has failed to allege sufficient facts to state a claim for the foreclosure of any collateral securing the Promissory Note.   As such, the Court need not address how the security agreement contained in the Promissory Note should be enforced under Delaware law.

The Court further finds that allowing Plaintiff to amend his Complaint to cure these deficiencies would be futile under Fed. R. Civ. P. 15 because Plaintiff has already conceded that no event of default has occurred, that he has not pled a Liquidity Event, and that the Maturity Date of the Promissory Note is March 31,

---

[95] *Id.* at p. 8 (citations omitted).
[96] 6 Del. Code §§ 9-601, 9-607 & 9-610.
[97] Editors' Notes, Note 3 to 6 Del. Code § 9-601.
[98] R. Doc. 14 at p. 3.

2022.[99]  Under the clear and unambiguous terms of the Promissory Note, interpreted and applied in accordance with Delaware law, Plaintiff does not have a cause of action to recover the missed monthly installment payments until the earlier of one of the four "exclusive default events," a Liquidity Event, or the seventh anniversary of the Promissory Note (March 31, 2022).[100]  Likewise, Plaintiff cannot foreclose on the collateral securing the Promissory Note until there has been an event of default.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Entertainment Acquisitions, LLC's Rule 12(B)(6) Motion to Dismiss for Failure to State a Claim[101] is **GRANTED.**    All of Alan Kirkendoll's claims asserted against Entertainment Acquisitions, LLC in the Complaint are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 26, 2020.


**WENDY B. VITTER**
**United States District Judge**

---

[99] R. Doc. 14 at p. 3.
[100] R. Doc. 1-1 at p. 3.
[101] R. Doc. 11.